UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
───────────────────────────────────────────────
SOLOMON AZOSE and NATALIE AZOSE,
Individually and on behalf of all others similarly
situated,

                Plaintiffs,            **MEMORANDUM & ORDER**
     -v.-                                   07-CV-4995 (DRH)(ARL)

J.P. MORGAN CHASE BANK, NATIONAL
ASSOCIATION,

                Defendant.
───────────────────────────────────────────────

**Appearances:**

**For the Plaintiffs:**
**HARRY I. KATZ, P.C.**
61-25 Utopia Parkway
Fresh Meadows, New York 11365
By:    Harry I. Katz, Esq.
         Victoria L. Weinman, Esq.

**For the Defendant**
**WILMER CUTLER PICKERING HALE & DORR LLP**
399 Park Avenue
New York, New York 10022
By:    Christopher R. Lipsett, Esq.
         Alan E. Schoenfeld, Esq.

**HURLEY, Senior District Judge**:

        Plaintiffs Solomon Azose and Natalie Azose, individually and on behalf of all persons similarly situated, ("Plaintiffs"), filed the present class action against Defendant JP Morgan Chase Bank, National Association ("Chase" or "Defendant")[1] alleging violations of the

---

[1] Defendant JPMorgan Chase Bank, North America is the sole remaining defendant in this action. The Amended Complaint named Washington Mutual Bank, J.P. Morgan Chase Bank, National Association, and J.P. Morgan Chase & Co. As defendants. (Am. Compl., filed December 22, 2008.) By Order dated February 24, 2009, (i) defendant JP Morgan Chase Bank, N.A. was substituted for defendant Washington Mutual Bank ("WaMu") based on Chase's

Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. §§ 1693 et seq., and its implementing regulations, 12 C.F.R. § 205 et seq. Defendant has moved to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). For the reasons that follow, Defendant's motion is granted and Plaintiffs' claims are dismissed.

*BACKGROUND*

**I.**     *The Complaint*

The background of this case is set forth in the Court's prior Memorandum and Order, dated December 3, 2008, familiarity with which is assumed. *Azose v. Washington Mutual Bank*, 588 F. Supp.2d 366 (E.D.N.Y. 2008). The following facts are taken from the Amended Complaint and are presumed true for purposes of this motion.

Plaintiffs were banking customers of Washington Mutual with checking and savings accounts at the bank ("Washington Mutual accounts"). (Am. Compl. ¶ 8.) On three separate occasions, June 15, 2007, June 18, 2007, and July 17, 2007[2], Plaintiffs used an automated teller machine ("ATM") at a Chase location in Lawrence, New York to conduct balance inquiries on their Washington Mutual accounts. (*Id.* ¶¶ 9, 16-21.) Washington Mutual charged an "ATM Balance Inquiry Fee" to Plaintiffs for each transaction. (*Id.*) On or about July

---

acquisition of certain assets and liabilities of WaMu from the Federal Deposit Insurance Corporation ("FDIC") acting in its role as receiver for WaMu following WaMu's closure by the Office of Thrift Supervision; and (ii) defendant JPMorgan Chase & Co., a holding company with no involvement in the matters at issue in this action was dismissed. (Order, dated February 24, 2009.)

[2]The Amended Complaint states two different dates for the third transaction, to wit, July 17, 2007 and July 18, 2007. (*Compare* Am. Compl. ¶¶ 9, 28, 31; Ex. B *with* ¶¶ 21, 44.) The monthly banking statement attached to the Complaint sets forth a July 17, 2007 transaction date and therefore for purposes of this motion the Court will use the July 17, 2007 date.

2007, Washington Mutual issued a monthly banking statement to Plaintiffs indicating that Washington Mutual had charged Plaintiffs a $2.00 ATM Balance Inquiry Fee for the June 15, 2007 ATM transaction, a $4.00 ATM Balance Inquiry Fee for the June 18, 2007 ATM transaction, and a $4.00 ATM Balance Inquiry Fee for the July 17, 2007 ATM transaction. (*Id.* ¶¶ 22-25.) At the time of each balance inquiry, the Chase ATM did not (i) provide notice to Plaintiffs that Washington Mutual would impose a fee for the transaction; (ii) disclose the amount of the fee Plaintiffs would be charged; and (iii) advise Plaintiffs that they could elect to discontinue the transaction based upon any fees. (*Id.* ¶¶ 10, 26-29.)

According to the Amended Complaint, Washington Mutual and Chase participated in a "shared network" arrangement wherein Washington Mutual, the card-issuing bank, paid Chase, the ATM operator, a fee for transactions made by Washington Mutual customers when they used a Chase ATM. (*Id.* ¶¶ 36-41.) Pursuant to this banking network arrangement, Chase imposed a fee on Washington Mutual when Plaintiffs used the Chase ATM on the three occasions in June and July 2007. (*Id.* ¶¶ 42-44.) In turn, Washington Mutual charged Plaintiffs a fee for using the Chase ATM which consisted of the fee charged to Washington Mutual by Chase, plus a "markup."[3] (*Id.* ¶ 45.)

## II. *Procedural Background*

Plaintiffs commenced this action in New York State Supreme Court, Queens County, on October 31, 2007 alleging principally that Defendants violated the EFTA and 12 C.F.R. § 205.16 of Regulation E, 12 C.F.R. §§ 205.1-205.18 ("Regulation E") by their failure to

---

[3]Plaintiffs assert in the Amended Complaint that while Washington Mutual "collects the fee from the customer calling it a 'foreign fee,' some or all of this fee actually represents the fee that was paid, or to be paid by [Washington Mutual], to Chase for [P]laintiffs' use of the Chase ATM." (*Id.*)

comport with the Act's notice and fee requirements. Defendant Washington Mutual removed this matter to this Court on November 30, 2007 pursuant to 28 U.S.C. § 1441(b).

In their Complaint, Plaintiffs asserted four state law claims[4] and a cause of action under the EFTA and 12 C.F.R. § 205.16 of Regulation E against defendants Chase and Washington Mutual alleging that defendants had assessed fees against them for conducting balance inquiry transactions at the Chase ATMs and that the ATMs did not provide notice that a fee would be charged for such bank inquiries nor did the ATM advise Plaintiffs that they could discontinue the transaction before incurring the fee. Chase and Washington Mutual each moved to dismiss the initial Complaint pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted under the EFTA. Both motions were granted. In so doing, the Court held that (i) as the ATM operator, Chase had no obligation under the EFTA and Regulation E to provide notice to customers of an account-holding bank that their account-holding bank would assess a fee on their accounts for each balance inquiry made at a Chase ATM; (ii) as the account-holding bank, Washington Mutual did not have any obligation under the EFTA and Regulation E to provide notice to its customers at non-Washington Mutual ATMs regarding the assessment of a balance inquiry fee it might impose at those ATMs; and (iii) to the extent that interbank fees were subsequently imposed on Plaintiffs pursuant to an agency or contractual arrangement between defendants thereby possibly triggering disclosure obligations under the EFTA and/or Regulation E, Plaintiffs were granted leave to amend the Complaint.

On December 22, 2008, Plaintiffs filed an Amended Complaint on behalf of themselves and all others similarly situated asserting claims against Chase, in its own capacity as

---

[4]Plaintiffs withdrew the four state law claims, and the claims were dismissed from the Complaint.

the ATM operator, and against Chase, as successor-in-interest to Washington Mutual as the account-holding bank. The Amended Complaint alleges principally that Chase and Washington Mutual participated in a shared network arrangement under which Washington Mutual paid a fee to Chase when a Washington Mutual customer used a Chase ATM for transactions, which in turn Washington Mutual collected from its customer. By virtue of this network, "Chase received a portion of the fee charged to the individual[] using the Chase ATM to conduct [Washington Mutual] business," thus giving rise to disclosure obligations under the EFTA and Regulation E which Chase failed to satisfy.

Chase now moves by the instant motion in its own capacity and as successor-in-interest to Washington Mutual[5] to dismiss the Amended Complaint pursuant to Rule 12(b)(6) for failure to state a claim on which relief can be granted.

## DISCUSSION

**I.** *Motion to Dismiss: Legal Standards*

Rule 8(a) provides that a pleading shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court has recently clarified the pleading standard applicable in evaluating a motion to dismiss under Rule 12(b)(6).

First, in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), the Court disavowed the well-known statement in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the

---

[5]Plaintiffs withdraw their cause of action against Chase in its capacity as successor-in-interest to Washington Mutual. (Pls.' Opp'n Mem. at 4 n.1.) Accordingly, Plaintiffs' claims against Chase as successor-in-interest to Washington Mutual are hereby dismissed.

plaintiff can prove no set of facts in support of his claim which would entitle him to relief." 550 U.S. at 562. Instead, to survive a motion to dismiss under *Twombly*, a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face." *Id*. at 570.

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Id.* at 555 (citations and internal quotation marks omitted).

More recently, in *Ashcroft v. Iqbal*, -- U.S. --, 129 S. Ct. 1937 (2009), the Supreme Court provided further guidance, setting forth a two-pronged approach for courts deciding a motion to dismiss. First, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 1950. "While legal conclusions can provide the framework of a complaint, they must be supported by factual assumptions." *Id.* Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 1949 (citing *Twombly*, 550 U.S. at 555).

Second, "[w]hen there are well-pleaded factual allegations a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 1950. The Court defined plausibility as follows:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for

> more than a sheer possibility that a defendant has acted unlawfully.
> Where a complaint pleads facts that are "merely consistent with" a
> defendant's liability, it "stops short of the line between possibility
> and plausibility of 'entitlement to relief.'"

*Id.* at 1949 (quoting *Twombly*, 550 U.S. at 556-57) (internal citations omitted).

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the court generally may only consider facts stated in the complaint or "[d]ocuments that are attached to the complaint or incorporated in it by reference." *Roth v. Jennings,* 489 F.3d 499, 509 (2d Cir. 2007);*Gillingham v. GEICO Direct*, 2008 WL 189671, at *2 (E.D.N.Y. Jan. 18, 2008) (same). A document not appended to the complaint may be considered if the document is "incorporated [in the complaint] by reference" or is a document "upon which [the complaint] *solely* relies and . . . is *integral to the complaint*." *Roth,* 489 F.3d at 509 (quoting *Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47 (2d Cir. 1991)) (emphasis in the original).

## II.   *Statutory and Regulatory Background*

The EFTA was enacted as part of the comprehensive Consumer Credit Protection Act, Pub. L. No. 95-630 § 2001, 92 Stat. 3641 (1978) (codified as amended at 15 U.S.C. § 1601 et seq.). Its purpose was to protect consumers by providing a "basic framework establishing the rights, liabilities, and responsibilities of participants in electronic transfer systems." 15 U.S.C. § 1693(b); *see Flores v. Diamond Bank,* 2008 WL 4861511, at *1 (N.D. Ill. Nov. 7, 2008); *Voeks v. Pilot Travel Ctrs.*, 560 F. Supp. 2d 718, 720 (E.D. Wis. 2008); *see also Household Finance Realty Corp. v. Dunlap*, 834 N.Y.S.2d 438, 442 (N.Y. Sup. Ct. 2007). Pursuant to the EFTA, an operator of an ATM is required to provide notice of the fees it charges to consumers. *Id.* Specifically, 15 U.S.C. § 1693b(d) states in pertinent part:

**(3)** **Fee disclosures at automated teller machines**

**(A)** **In general**

The regulations prescribed under paragraph (1) shall require any automated teller machine operator who imposes a fee on any consumer for providing host transfer services to such consumer to provide notice in accordance with subparagraph (B) to the consumer (at the time the service is provided) of–

(i) the fact that a fee is imposed by such operator for providing the service; and

(ii) the amount of any such fee.

**(B)** **Notice requirements**

**(i)** **On the machine**

The notice required under clause (i) of subparagraph (A) with respect to any fee described in such subparagraph shall be posted in a prominent and conspicuous location on or at the automated teller machine at which the electronic fund transfer is initiated by the consumer.

**(ii)** **On the screen**

The notice required under clauses (i) and (ii) of subparagraph (A) with respect to any fee described in such subparagraph shall appear on the screen of the automated teller machine, or on a paper notice issued from such machine, after the transaction is initiated and before the

> consumer is irrevocably committed
> to completing the transaction . . . .
>
> **(C) Prohibition on fees not properly disclosed and explicitly assumed by consumer**
>
> No fee may be imposed by any automated teller machine operator in connection with any electronic fund transfer initiated by a consumer for which a notice is required under subparagraph (A), unless –
>
> (i) the consumer receives such notice in accordance with subparagraph (B); and
>
> (ii) the consumer elects to continue in the manner necessary to effect the transaction after receiving such notice.
>
> **(D) Definitions**
>
> For purposes of this paragraph, the following definitions shall apply:
>
> **(i) Automated teller machine operator**
>
> The term "automated teller machine operator" means any person who–
>
> (I) operates an automated teller machine at which consumers initiate electronic fund transfers; and
>
> (II) is not the financial institution that holds the account of such consumer from which the transfer is made.

15 U.S.C. § 1693b(d)(3).

In enacting the EFTA, Congress delegated to the Board of Governors of the Federal Reserve System (the "Board") the authority and responsibility to "prescribe regulations to carry out the purposes" of the Act. 15 U.S.C. § 1693b(a). In particular, with respect to the

issue of ATM notice, the Board has promulgated certain administrative regulations codified at 12 C.F.R. § 205 ("Regulation E"). In relevant part, Regulation E provides:

> **§ 205.16** **Disclosures at automated teller machines**
>
> (b) General. An automated teller machine operator that imposes a fee on a consumer for initiating an electronic fund transfer or a balance inquiry shall:
>
> (1) Provide notice that a fee will be imposed for providing electronic fund transfer services or a balance inquiry; and
>
> (2) Disclose the amount of the fee.

12 C.F.R. § 205.16. The regulation distinguishes between the requirements for on-machine and on-screen notices. With respect to the on-machine notice, the ATM operator must provide notice to a potential consumer that:

> (i) A fee will be imposed for providing electronic fund transfer services or for a balance inquiry; or
>
> (ii) A fee may be imposed for providing electronic fund transfer services or for a balance inquiry, but the notice in this paragraph (c)(1)(ii) may be substituted for notice in paragraph (c)(1)(i) only if there are circumstances under which a fee will not be imposed for such services. . . .

12 C.F.R. § 205.16(c)(1). With respect to the on-screen notice, the notice must inform the consumer that a fee will be imposed and the amount of the fee before the consumer is committed to completing the transaction. 12 C.F.R. § 205.16(c)(2).

Likewise, pursuant to the EFTA and Regulation E, a financial institution is

required to provide certain initial disclosures to its consumers regarding any fees imposed by the financial institution. For purposes of this part, the following definition shall apply:

### § 205.2    Definitions

(i) *Financial Institution* means a bank, savings association, credit union, or any other person that directly or indirectly holds an account belonging to a consumer, or that issues an access device and agrees with a consumer to provide electronic fund transfer services.

12 C.F.R.§ 205.2(i). Specifically, 12 C.F.R. § 205.7 provides in pertinent part:

### § 205.7    Initial disclosures

(a) *Timing of Disclosures.* A financial institution shall make the disclosures required by this section at the time a consumer contracts for an electronic fund transfer service, or before the first electronic fund transfer is made involving the consumer's account.

(b) *Content of disclosures.* A financial institution shall provide the following disclosures, as applicable:
. . . .

(5) *Fees.* Any fees imposed by the financial institution for electronic fund transfers or for the right to make transfers.
. . . .

(11) *ATM fees.* A notice that a fee may be imposed by an automated teller machine operator as defined in § 205.16(a)(1), when the consumer initiates an

> electronic fund transfer or
> makes a balance inquiry, and
> by any network used to
> complete the transaction.

12 C.F.R. § 205.7; *see* 15 U.S.C. § 1693c(a)(4) ("The terms and conditions of electronic fund transfers involving a consumer's account shall be disclosed at the time the consumer contracts for an electronic fund transfer service, in accordance with the regulations of the Board. Such disclosures . . . shall include . . . any charges for electronic fund transfers or for the right to make such transfers.").

A bank's conduct is not actionable if it complies with Regulation E or the Board's Official Commentary. 15 U.S.C. § 1693m(d). As the automated teller machine operator, Chase is subject to the disclosure obligations under 12 C.F.R. § 205.16.

### III. *Defendant's Motion to Dismiss the Amended Complaint is Granted*

Plaintiffs' cause of action against Chase, as the ATM operator, alleges that Chase is in violation of Section 205.16 of Regulation E because "pursuant to Section 205.16 . . . , an automated teller machine operator that imposes a fee for a balance inquiry is required to provide notice that a fee will be imposed for providing a balance inquiry" and "to disclose the amount of the fee," but that Chase's ATM provided no such disclosure. (Am. Compl. ¶¶ 64-74.) According to Plaintiffs, (i) Chase and Washington Mutual participated in a shared network under which Washington Mutual was required to make a payment to Chase when a Washington Mutual customer used a Chase ATM for a transaction, (*id.* at ¶¶ 36-40); (ii) pursuant to a contractual agreement between Chase and Washington Mutual (the "agreement"), when Plaintiffs used the Chase ATM, Washington Mutual paid an interchange fee to Chase, (*id.* at ¶¶ 42-44, 69); and (iii) under the agreement, Washington Mutual's ATM fee charged to Plaintiffs for conducting the

balance inquiries on the Chase ATM included the interchange fee that Chase had imposed on Washington Mutual, (*id*. at ¶¶ 36-40.)  Plaintiffs maintain that because "Chase received a portion of the fee charged to the individuals using the Chase ATM to conduct Washington Mutual business" and because Washington Mutual acted "as an agent of Chase, for collecting the interchange fee which it passed onto the customer," (*id*. at ¶¶ 70-71), Chase was liable for the nondisclosure of such fees at the Chase ATMs under the EFTA and Regulation E, (*id*. at ¶¶ 72-74.)

Chase moves to dismiss the claims asserting that as the ATM operator (i) it had no disclosure obligation under the EFTA and Regulation E at its ATM because it did not impose any fees on Plaintiffs; and (ii) it had no disclosure obligation under the EFTA and Regulation E arising out of an interchange fee that it may have imposed on Washington Mutual for Washington Mutual's customers conducting a balance inquiry on their Washington Mutual accounts at a Chase ATM.  The Court agrees.

By its terms, Regulation E requires Chase, as the ATM operator, to disclose at the ATM only those fees that Chase imposed on Plaintiffs for the balance inquiries they made at the Chase ATM.  12 C.F.R. § 205.16(b) (stating an ATM operator "that imposes a fee on a consumer" for initiating a balance inquiry shall provide notice); 15 U.S.C. § 1693(d)(3) (same); *cf. Morrissey v. Webster Bank, N.A.*, 417 F. Supp. 2d 183, 189 (D. Mass. 2006) (stating that under the terms of the EFTA and Regulation E, "the notice regulation only applies to an ATM operator that imposes a fee") (internal quotation marks and citation omitted); *Clemmer v. Key Bank, N.A.*, 2007 WL 5303533, at *1 (N.D. Ohio June 20, 2007) (holding "the statute only requires notice to those consumers on whom the bank imposes a fee") (internal quotation marks and citation

omitted), *aff'd* 539 F.3d 349 (6th Cir. 2008); *Brown v. Bank of America, N.A.*, 457 F. Supp. 2d 82, 86 (D. Mass. 2006) ("Though starting with the general statement that the notice provision applies to an ATM operator who imposes a fee 'on any consumer,' the statute then requires that the notice actually be given only 'to *such* customer . . . that a fee is imposed.'") (emphasis in original).

Thus, Plaintiffs' assertions in the Amended Complaint that pursuant to the banking network arrangement, (i) Chase imposed a fee on Washington Mutual based on Plaintiffs' use of Chase's ATM,[6] and (ii) Washington Mutual imposed a fee on Plaintiffs for their use of the Chase ATM[7] do not lead to any ATM disclosure obligations on the part of Chase because there is no

---

[6]The Amended Complaint alleges that (1) "[I]n the banking industry, a transaction involving a customer from Bank A using an ATM owned by Bank B, generates certain fees to be paid by Bank A to Bank B . . . Bank A, the card-issuing bank, must pay the ATM owner, Bank B, a fee, sometimes known as an interchange fee," (Am. Compl. ¶¶ 3-4); (2) "[Washington Mutual], the card issuing bank, must pay the ATM owner, Chase, a fee for transactions by [Washington Mutual] customers, when [Washington Mutual] customers use a Chase ATM," (*id.* at ¶ 39); (3) "[T]here exists an agreement between Chase and [Washington Mutual] that if a [Washington Mutual] customer uses a Chase ATM, [Washington Mutual] must pay a fee to Chase," (*id.* at ¶40); (4) "[T]here exists an agreement between ATM owners or operators and other banks that if a customer of the other bank uses the ATM, the other bank must pay a fee to the ATM owner or operator," (*id.* at ¶ 41); (5) "[D]efendant [Washington Mutual] paid a fee to the owner of the ATM, Chase" in connection with the June 15, 2007 balance inquiry, (*id.* at ¶ 42); (6) "[D]efendant [Washington Mutual] paid a fee to the owner of the ATM, Chase" in connection with the June 18, 2007 balance inquiry, (*id.* at ¶ 43); (7) "[D]efendant [Washington Mutual] paid a fee to the owner of the ATM, Chase," in connection with the July 18, 2007 balance inquiry, (*id.* at ¶ 44); and (8) "[Washington Mutual's] ATM fee charged to [P]laintiffs consisted of the fee charged to [Washington Mutual] by Chase, plus a mark up," (*id.* at ¶ 45.)

[7]The Amended Complaint alleges: (1) "Plaintiffs were charged a balance inquiry for each transaction by [Washington Mutual]," (Am. Compl. at ¶ 9); (2) Washington Mutual "was charging the plaintiffs a $2.00 ATM Balance Inquiry Fee for the aforementioned June 15, 2007 ATM transaction," (*id.* at ¶ 23); (3) Washington Mutual "was charging the plaintiffs a $4.00 ATM Balance Inquiry Fee for the aforementioned June 17, 2007 ATM transaction," (*id.* at ¶ 24); and (4) Washington Mutual "was charging a $4.00 ATM Balance Inquiry Fee for the aforementioned July 18, 2007 ATM transaction," (*id.* at ¶ 25.)

allegation that Chase imposed a fee on Plaintiffs in any of the transactions.

Likewise, Plaintiffs' assertions in the Amended Complaint that pursuant to the banking network arrangement, the interbank fees and/or surcharge fees[8] paid by the account-holding bank, Washington Mutual, to the ATM operator of the shared or interchange ATM system, Chase, were subsequently imposed on Plaintiffs by Washington Mutual[9] fail to lead to any ATM disclosure obligations on the part of Chase.

With respect to the disclosure requirements of "interchange system fees," that is, the "[f]ees paid by the account-holding institution to the operator of a shared or interchange ATM system," 12 C.F.R. part 205 Supp. I ¶ 7(b)(5)-3, the two provisions of Regulation E and the Official Commentary to Regulation E that address these interbank fees apply only to the account-holding institution.

First, paragraph 7(b)(5) of the Official Commentary to Regulation E provides in

---

[8]To extent that it can be inferred from the Amended Complaint that Washington Mutual and Chase entered into a contractual relationship regarding surcharges imposed on the Plaintiffs at the Chase ATMs for conducting a balance inquiry transaction, the Court will consider such a claim as well. *See infra*.

[9]The Amended Complaint alleges: (1) Washington Mutual's "ATM fee charged to [P]laintiffs consisted of the fee charged to [Washington Mutual] by Chase, plus a mark up. Thus while defendant [Washington Mutual] collects the fee from the customer calling it a 'foreign fee,' some or all of this fee actually represents the fee that was paid, or to be paid by [Washington Mutual] to Chase for [P]laintiffs' use of the Chase ATM," (Am. Compl. at ¶ 45); (2) "[P]art or all of the 'foreign fee' charged by [Washington Mutual] was paid or be paid to Chase. Chase is thereby collecting a fee from the customer, and is subject to EFTA," (*id*. at ¶ 46); (3) "[t]he defendants herein acted in concert or in a joint venture, or as the agent of the other, pursuant to a contractual obligation whereby Chase received a portion of the fee charged to the customer for using the Chase ATM to conduct [Washington Mutual] business," (*id*. at ¶ 49); (4) [D]efendants collected a fee from the [P]laintiffs by way of the . . . 'interchange fee' thus requiring them to give the [P]laintiffs the requisite notice," (*id*. at ¶ 69); and (5) "Chase and [Washington Mutual] acted in concert or in a joint venture, or as the agent of the other, pursuant to a contractual agreement, whereby Chase received a portion of the fee charged to the individuals using the Chase ATM to conduct [Washington Mutual] business," (*id*. at ¶ 70.)

pertinent part:

> 3. *Interchange system fees.*
>
> > [f]ees paid by the account-holding institution to the operator of a shared or interchange ATM system need not be disclosed, unless they are imposed on the consumer by the account-holding institution. Fees for use of an ATM that are debited directly from the consumer's account by an institution other than the account-holding institution (for example, fees included in the transfer amount) need not be disclosed. (See § 205.7(b)(11) for the general notice requirement regarding fees that may be imposed by ATM operators and by a network used to complete the transfer).

12 C.F.R. part 205 Supp. I ¶ 7(b)(5)-3. Assuming that Washington Mutual, the account-holding institution, paid interchange system fees to Chase which Washington Mutual imposed on Plaintiffs for use of the Chase ATM, such fees need only have been disclosed in Washington Mutual's initial disclosures to Plaintiffs, that is, at the time the individual Plaintiff "contract[ed] for an electronic fund transfer service or before the first electronic fund transfer [wa]s made involving the consumer's account." 12 C.F.R. § 205.7(a).

Second, paragraph 9(b)(3)-2 of the Official Commentary to Regulation E provides in pertinent part:

> 2. *Fees in interchange system.*
>
> > [a]n account- holding institution must disclose any fees it imposes on the consumer for EFTs, including for ATM transactions in an interchange or shared ATM system. Fees for use of an ATM imposed on the consumer by an institution other than the account-holding institution and included in the amount of the transfer by the terminal-operating institution need not be separately disclosed on the periodic statement.

12 C.F.R. part 205 Supp. I ¶ 9(b)(3)-2. Pursuant to this provision, assuming that Washington Mutual, the account-holding institution, imposed an interchange fee on Plaintiffs for transactions at the Chase ATMs, Washington Mutual was required to disclose any interchange fees in its periodic statements to Plaintiffs. 12 C.F.R. § 205.9(b).[10]

With respect to the disclosure requirements of a surcharge fee, paragraph 16(b)(1) of the Official Commentary to Regulation E provides in pertinent part:

> 1. *Specific notices.* An ATM operator that imposes a fee for a specific type of transaction – such as for a cash withdrawal, but not for a balance inquiry, or for some case withdrawals, *but not for others* (such as where the card was issued by a foreign bank or *by a card issuer that has entered into a special contractual relationship with the ATM operator regarding surcharges*) – may provide a notice on or at the ATM that a fee will be imposed for providing EFT services or may specify the type of EFT for which a fee is imposed. If, however, a fee will be imposed in all instances, the notice must state that a fee will be imposed.

12 C.F.R. part 205 Supp. I ¶ 16(b)(1) (emphasis supplied). To the extent that Plaintiffs' allege in the Amended Complaint that Washington Mutual entered into a special contractual relationship

---

[10]Section 205.9(b) (3) provides in pertinent part:

> (b) *Periodic statements.* For an account to or from which electronic fund transfers can be made, a financial institution shall send a periodic statement for each monthly cycle in which an electronic fund transfer has occurred . . . . The statement shall set forth the following information, as applicable:
>
> (3) *Fees.* The amount of any fees assessed against the account during the statement period for electronic fund transfers, for the right to make transfers, or for account maintenance.

12 C.F.R. § 205.9(b)(3).

with Chase regarding any surcharges that Washington Mutual imposed on Plaintiffs for transactions at a Chase ATM, under this provision there is no obligation on the part of Chase as the ATM operator to disclose such fees.

In short, nothing in Plaintiffs' factual allegations in the Amended Complaint that Chase and Washington Mutual participated in a shared network arrangement, requiring the payment of interchange fees between banks, places any ATM disclosure obligations on Chase under the EFTA and Regulation E. Plaintiffs' conclusory allegations that Chase and Washington Mutual were "act[ing] in concert or in a joint venture, or as the agent of the other, pursuant to a contractual obligation whereby Chase received" payment from Washington Mutual, (Am. Compl. ¶ 49), do not alter the result. The Amended Complaint contains no factual allegations to suggest that Plaintiffs' bank accounts were held by any joint venture between Chase and Washington Mutual or that Chase and Washington Mutual jointly imposed the fees on Plaintiffs' bank accounts or that the relationship between the banks was anything other than what appears on its face. Which is to say, Plaintiffs' Amended Complaint contains insufficient "[f]actual allegations . . . to raise a right to relief above the speculative level." *Twombly*, 127 S. Ct. at 1965.

Accordingly, Defendant's motion to dismiss the Amended Complaint is granted.

## *CONCLUSION*

For the foregoing reasons, Defendant's motion to dismiss the Amended Complaint is GRANTED. The Clerk of the Court is directed to close this case.

**SO ORDERED.**

Dated: Central Islip, N.Y.
January 26, 2010

/s                     

Denis R. Hurley,
United States District Judge